**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**


**ELLIOT L. JONES**

      **Plaintiff,**

**vs.**                                    **CASE NO. 1:08CV188-MP/AK**

**MICHAEL J. ASTRUE,
Commissioner of Social Security**

      **Defendant.**

_____/


## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## A.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI on October 27, 2005, alleging an amended disability onset date of October 18, 2005, because of back, neck and chest pain; emphysema; neuropathia; high blood pressure; asthma; depression; and anxiety. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who

conducted a hearing on December 11, 2007, and entered an unfavorable decision on

March 19, 2008.  The Appeals Council denied Plaintiff's request for review on July 8,

2008, thus making the decision of the ALJ the final decision of the Commissioner.  This

action followed.

B.    **FINDINGS OF THE ALJ**

The ALJ found that the Plaintiff had a severe combination of impairments:

chronic obstructive pulmonary disease (COPD), hypertension, neuropathy, ulcer

disease, status post ulcer surgery, gastroesophageal reflux disease (GERD), chronic

back pain, depression, and panic attacks, but that this did not meet the listings.  (R. 14-

16).  Further, despite his combination of impairments, Plaintiff has the residual

functional capacity to perform low-stress unskilled work involving one-, two-, or three-

step instructions, not in close proximity to co-workers or requiring him to function as a

member of a team, and not in direct contact with the public.  (R. 16-20).  In making this

finding, the ALJ considered the  nature and extent of Plaintiff's symptoms that were

reasonably consistent with objective medical evidence and opinion evidence.  (R. 17-

18).

While Plaintiff testified to mental and physical limitations, the ALJ found that there

was no medical evidence in the record demonstrating more than mild to moderate

limitations.  (R. 15-16).  Moreover, Plaintiff's subjective complaints of pain and limitation

are not fully credible because they conflict with his own description of his daily activities,

the conservative and non-aggressive treatment history, Plaintiff's testimony and reports,

and objective clinical and laboratory findings on the record.  (R. 16, 18).

**No. 1:08CV188-MP/AK**

In addition, the ALJ found that, based upon the testimony of a vocational expert, there are significant numbers of jobs available regionally and nationwide that only require Plaintiff to perform light work.  (R. 19-20).  Therefore, Plaintiff is not disabled and can find work performing one of these jobs.

## C.    ISSUES PRESENTED

Plaintiff argues that the ALJ erred by incorrectly assessing Plaintiff's residual functional capacity and additionally failed to include all of Plaintiff's mental limitations in the hypotheticals posed to the vocational expert.  (Plaintiff's Br. at 4-8).

The government responds by arguing that the ALJ's residual functional capacity assessment was substantially supported by the objective medical evidence and Plaintiff's daily activities.  (Defendant's Br. at 4).  Additionally, the government argues that the ALJ's hypothetical questioning properly included all of Plaintiff's mental limitations as the ALJ found them to be based upon the record.  The ALJ properly found that Plaintiff was limited to simple, unskilled work.  (R. 16-20).  These are the same limitations posed by the ALJ to the vocational expert in the hypothetical.  (R. 528-530).

The issue thus presented is whether the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

## D.    STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and

**No. 1:08CV188-MP/AK**

the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal.  Id. (citations omitted).

**No. 1:08CV188-MP/AK**

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that Plaintiff is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work. If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments,

**No. 1:08CV188-MP/AK**

Plaintiff can perform.  <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986);

<u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner

carries this burden, Plaintiff must prove that he cannot perform the work suggested by

the Commissioner.  <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within

the district court's discretion to affirm, modify, or reverse a Commissioner's final

decision with or without remand. 42 U.S.C. § 405(g); <u>Myers v. Sullivan</u>, 916 F.2d 659,

676 (11th Cir. 1990).

**E.    SUMMARY OF PLAINTIFF'S RELEVANT MEDICAL HISTORY**

Plaintiff's chief complaints are chest and back pain, shortness of breath,

depression, and anxiety.  Plaintiff primarily sought treatment for his chest and back pain

as well as asthma and emphysema from Shands at UF Family Practice Medical Group

from March 2005 through September 2005, prior to the onset of his disability.  (R. 140-

152).  For Plaintiff's back pain, his physician at Family Practice Medical Group, Dr.

Karen L. Hall, prescribed Baclofen and Neurontin.  (R. 140).  Additionally, Dr. Hall

prescribed HCTZ and Lisinopril for Plaintiff's high blood pressure, Albutrol and Advair for

his asthma, Desyrel for depression, and BuSpar for anxiety.  (R. 141).

Following his conviction for felony possession and sale of cocaine, Plaintiff was

referred by Florida Department of Corrections to Meridian Behavioral Health in 2005 for

vocational rehabilitation and treatment for drug and alcohol addiction, depression, and

anxiety attacks.  (R. 336).  Plaintiff was treated on an outpatient basis at Meridian from

January 2005 though February 2006 and had also previously received treatment at

**No. 1:08CV188-MP/AK**

Meridian for alcohol and drug abuse November 2000 through February 2001.  (R. 250-255, 175, 202, 331, 334).

Plaintiff reported to the emergency room several times in 2006 and 2007 due to chest pain and difficulties breathing.  In May 2006, he was admitted to the Shands AGH emergency department for chest pain that had lasted two to three weeks and for shortness of breath after Plaintiff had run out of his asthma medication.  (R. 469-470).  The physician was unable to detect any underlying irregular pulse, chills, fever, edema (swelling caused by fluid in body tissue), diaphoresis (excessive sweating), cyanosis (blue coloration of the skin caused by decreased blood oxygen levels), or syncope (partial or temporary loss of consciousness).  (R. 470).

In April 2007, Plaintiff was admitted to the North Florida Regional Medical Center Hospital for chest pain.  (R. 440).  One month later, Plaintiff was admitted to the Shands AGH emergency department for shortness of breath and was diagnosed with severe anxiety, asthma, GERD, and chronic back pain.  (R. 478).  During his four-day stay, Plaintiff was prescribed Risperdal for his "strong anxiety" and seemed to respond well; his anxiety symptoms improved.  (R. 478).  Plaintiff also received medications upon discharge to treat his asthma and back pain.  (R. 479).  In x-rays, Plaintiffs heart appeared normal, and his lungs were hyperexpanded, which is consistent with chronic air trapping associated with asthma and COPD.  (R. 480).

In August 2007, Plaintiff presented to the Shands AGH emergency department for shortness of breath and was diagnosed with "GERD, panic disorder, social issues."

**No. 1:08CV188-MP/AK**

(R. 486). An August 6, 2007 chest x-ray indicated no evidence of acute cardiopulmonary process. (R. 486). The treating physician noted that Plaintiff's asthma, allergies and shortness of breath were exacerbated by his panic disorder. (R. 486). Plaintiff also received medications upon discharge to treat his asthma and back pain. (R. 486). In November 2007, a few weeks before his administrative hearing, Plaintiff was admitted to the emergency room at North Florida Regional Medical Hospital for difficulty breathing (R. 437).

Two state agency consultants evaluated Plaintiff's mental limitations. On May 3, 2006, Dr. Val Bee completed a psychiatric review technique form indicating that Plaintiff suffered from major depression and anxiety, which caused mild to moderate restrictions upon his daily functioning that did not meet the listings in severity, and Plaintiff did not have any episodes of decompensation. (R. 379-387). Dr. Bee also noted that Plaintiff's depression and anxiety were related to his history of alcohol and cocaine abuse and that Plaintiff showed no psychiatric decompensation despite the numerous stresses in his life, including his living situation and care for his schizophrenic brother. (R. 388). In addition, Plaintiff's "limitations appear[ed] mostly attributed to pain" and Plaintiff "was applying for disability due to an old injury and asthma." (R. 388).

On the same day, Dr. Bee also completed a mental residual functional capacity assessment, finding Plaintiff's understanding and memory not significantly limited, his sustained concentration and persistence moderately limited, his social interaction not significantly limited, and his ability to set realistic goals or make independent plans

**No. 1:08CV188-MP/AK**

moderately limited. (R. 391). In light of these abilities, Dr. Bee noted that Plaintiff was "mentally capable of [of] well structured task activity." (R. 392).

Additionally, in a December 6, 2005 psychiatric review technique form and an undated mental residual functional capacity assessment, Dr. Alejandro F. Vergara had the same findings as Dr. Bee and noted that Plaintiff, while experiencing difficulties understanding *detailed* instructions, retained the "mental capabilit[y] to do simple, repetitive type tasks and assignments," took care of his personal hygiene, fed his dog, prepared simple meals, shopped for food and necessities, and attended church. (R. 136-138, 165) (emphasis added). "Memory is not impaired . . . [and there is] no evidence of thought[] disorder, delusions or hallucinations. Judg[]ment and insight are fair. No signs of psychosis . . . ." (R. 165).

## F.  SUMMARY OF THE ADMINISTRATIVE HEARING

Plaintiff was 49 years old at the time of the hearing and had completed two years of part-time college. (R. 520). He had previously worked as a nurse's assistant and last worked in 1995. (R. 521). He suffers from chronic back pain and back spasms in addition to COPD, emphysema, and asthma. (R. 522). When questioned by the ALJ whether Plaintiff also suffers from depression and anxiety, Plaintiff confirmed. (R. 522).

He has constant pain in both his lower and upper back, which stems from a couple of car accidents in the 1990s and hard work, and back spasms that occur when Plaintiff physically exerts himself and sometimes cause him to be bedridden. (R. 521, 523-524). In addition, he has panic attacks every three to six months that cause him to

feel hot and sweaty, frequently staying up "all day and all night worrying."  (R. 524-525).

He frequently goes to the hospital when he suffers from a panic attack.  (R. 526).

The hypothetical posed to the vocational expert contained both physical and mental limitations.  The initial hypothetical included: able to lift and carry 10 pounds occasionally, 20 pounds frequently; avoid frequently ascending/descending stairs, pushing and pulling with legs, and climbing; able to stand six hours, sit six hours, push and pull with arms, perform activities requiring bilateral manual dexterity, and occasionally balance, stoop, crouch, kneel, and crawl; restricted to relatively clean working environment, low stress simple unskilled work requiring only one-, two-, or three-step instructions; capable of understanding, remembering, and carrying out simple job instructions.  (R. 528-529).

The expert testified that this hypothetical precluded Plaintiff's past relevant work.  However, there were several other jobs in the national economy that Plaintiff could perform at the light and sedentary levels.  (R. 529).

The ALJ then added that the Plaintiff should not work in close proximity with co-workers in a team environment.  With this additional limitation, the vocational expert testified that this would not change the number or scope of suitable jobs meeting Plaintiff's residual functional capacity.  (R. 530).

The ALJ then added an additional limitation, that the Plaintiff had "moderate difficulties in maintaining concentration, persistence, or pace."  (R. 530).  The vocational

expert testified that this would also not change the number or scope of suitable jobs meeting Plaintiff's residual functional capacity.  (R. 530).

Finally, the ALJ added another limitation, that the Plaintiff had "marked [difficulties] in maintaining concentration, persistence, or pace."  (R. 530).  In response, the  vocational expert testified that this would impact the Plaintiff's ability to maintain employment at a light or sedentary level.  (R. 530)

## G.    DISCUSSION

### a)    RFC Assessment

An individual's ability to work must be assessed in light of all her impairments and any related symptoms, including pain, which is referred to as their residual functional capacity (RFC).  20 CFR §404.1545.  A person's residual functional capacity is based on the *most* they can do despite their limitations.  *Id.*  In making this determination, all of person's impairments are considered, even those which are not considered severe, and the entire record is to be considered, even non-medical information.  *Id.*  The claimant is responsible for providing this evidence.  *Id.*  This assessment is first used at Step Four of the evaluation process.  If the ALJ determines that a claimant cannot do his past relevant work, then the same RFC will be used at Step Five in conjunction with the Guidelines to decide if the person can make an adjustment to other work in the national economy.

Medical opinions from treating sources are entitled to "special significance" and may be entitled to controlling weight if they are well-supported by clinical and laboratory

**No. 1:08CV188-MP/AK**

diagnostic techniques and are not inconsistent with other substantial evidence.  If the ALJ's assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p.

The ALJ gave controlling weight to the Plaintiff's treating sources' medical opinions and also considered the non-treating opinions of Drs. Bee and Vergara that were consistent with the overall record.  (R. 136-138, 376-387).  Moreover, even if the ALJ did not consider Drs. Bee and Vergara's opinions, which is unclear whether and how he did, the rest of the record including Plaintiff's testimony and daily activities and objective clinical and laboratory evidence support the ALJ's finding that the Plaintiff possessed the ability to perform light or sedentary work with limitations.

The record as a whole, including treating source opinions, clinical and laboratory evidence, Drs. Bee and Vergara's assessments, and the Plaintiff's testimony and daily activities, strongly supports the ALJ's finding that while the Plaintiff has difficulties with *complex* instructions due to his mental limitations, he does not suffer the same debilitating challenge with *simple* instructions.  Dr. Bee noted as much: While his "depression and anxiety symptoms may cause *occasional* lapses in concentration and efficiency . . . he appears mentally capable [of] well structured task activity."  (R. 392) (emphasis added).  This statement by Dr. Bee is in the same assessment that includes the opinion upon which Plaintiff relies in arguing that the ALJ incorrectly assessed Plaintiff's residual functional capacity.  (Plaintiff's Br. at 7).  In this assessment, Dr. Bee indicated that Plaintiff's ability to complete a normal workday and workweek without

**No. 1:08CV188-MP/AK**

interruption and ability to perform at a consistent pace without an unreasonable number and length of breaks was only ***moderately****,* and not markedly, limited.  (R. 391).

Moreover, the rest of the objective medical evidence and treating source opinions also indicate that Plaintiff's mental limitations do not preclude him from performing work involving simple instructions where he will occasionally have lapses in concentration, persistence, or pace.  Therefore, the ALJ's residual functional assessment properly accounts for Plaintiff's limitation to the extent the record supports it.  Regardless of whether the ALJ properly considered the consulting opinions, the ALJ's residual functional capacity finding was proper.  See  Lubinski v. Sullivan, 952 F.2d 214, 216 (8th Cir. 1991) (An error by the ALJ will be held harmless if the evidence is strong enough to support the outcome despite the lapse); Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (same).

     b)     Hypothetical Posed to Vocational Expert

At the fifth step of the evaluation process, the ALJ must determine whether a Claimant, based on his residual functional capacity, age, education and work experience, can adjust to other work in the national economy.  20 C.F.R. § 404.1520(a)(4).  The ALJ may make this determination by reliance upon the Medical Vocational Guidelines or by utilizing the services of a vocational expert.  Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004).

When the ALJ uses a vocational expert, he elicits responses from the expert by posing hypothetical questions to him or her.  Phillips, 357 F.3d at 1240.  In order for the

expert's testimony to constitute substantial evidence to support the ALJ's findings with regard to this point, the ALJ must pose a hypothetical that includes all of Claimant's impairments.  <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999).  However, the ALJ is only required to pose those limitations he finds severe in the hypothetical to the expert. <u>Pendley v. Heckler</u>, 767 F.2d 1561, 1563 (11th Cir. 1985).

Because the ALJ properly found that the Plaintiff's mental limitations still permitted him to comprehend and follow simple instructions with moderate difficulties in maintaining concentration, persistence, or pace, these are the only mental limitations the ALJ was required to pose to the expert.  (R. 16-19).  Therefore, the ALJ's hypothetical properly included all of the Plaintiff's mental limitations, including his moderate limitation in concentration, persistence, or pace.  (R. 530).  This limitation did not change the vocational expert's opinion regarding the number or scope of suitable jobs in the national economy for Plaintiff.  (R. 530).

Accordingly, the ALJ properly applied the vocational expert's testimony to find that there are jobs existing in the national economy that Plaintiff is able to perform.  Therefore, Plaintiff is not disabled.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this   _1st_ day of February, 2010.

*s/ A.  KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**No. 1:08CV188-MP/AK**

## **NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:08CV188-MP/AK**